CHRISTIAN, J.
delivered the opinion of the court.
*The first question we have to decide in this case is whether this court has jurisdiction.
The bill was filed in the County court of Tazewell by Umbarger and wife, for the purpose of subjecting the life estate of Sterling P. Watts in certain real estate to the lien of a judgment which had been confessed in their favor by him for the sum of $394, with interest from the 9th day of January 1871, and upon which an execution had been issued and returned ‘ ‘no property. ’ ’ During the progress of the cause, and before any decree was rendered, other judgment creditors of Watts filed their petition, in which they exhibit copies of judgments in favor of each of them, respectively, and assert their right to subject to the lien of their judgments whatever interest in real estate the said Watts may be entitled to. Neither of these claims amount to the sum of $500, the largest being below that sum.
The bill of Umbarger and wife is answered by Watts and wife and also by Pudge, trustee of Mrs. Watts, in which several answers it is claimed that before the recovery of the judgment by Umbarger and wife the land sought to be charged with the lien of their judgment had been, for a valuable and lawful consideration, conveyed to Pudge, trustee, for the sole use and benefit of Mrs. Watts; and that the deed conveying said land had been put upon record before the judgment in favor of Umbarger and wife was confessed by Watts.
Much evidence was taken as to the fact of the recordation of the deed, which it is not necessary here to notice. The County court rendered a decree declaring that “the land in the bill and proceedings mentioned were liable to the liens of the several judgments, inasmuch as the trust deed for the benefit of *the female defendant was not admittéd to record until after the rendition of said judgments.”' It was accordingly decreed that Sterling P. Watts pay to the several judgment creditors the amounts of their several judgments, and, in default thereof, commissioners appointed by the court were directed to sell the lands for that purpose.
Prom this decree an appeal was taken to the Circuit court of Tazewell county; which court reversed the decree of the County court, dismissed the bill of Umbarger and wife, and also dismissed the petition of the other judgment creditors, but without prejudice to the latter to institute new proceedings. Prom the decree of the Circuit court an appeal was allowed to this court.
The jurisdiction of this court is invoked upon two grounds: 1st. That, although no one of the several claims of the appellants amount to the sum of $500, yet the aggregate sum of all amounts to more than that sum, and that having a joint interest in subjecting the land to the payment of their several judgments, 'the aggregate amount ought to be considered in this court as the amount in controversy.
2d. But if the aggregate amount is not to be considered the amount in controversy, but each claim is to be considered as several and independent, still this court may take jurisdiction, because the matters in controversy are concerning “the title or bounds of lands,” which the constitution recognizes as a proper subject of jurisdiction.
As to the first proposition, it is clear that the claims of the appellant are several, and independent of each other. They are founded upon different contracts, upon judgments obtained at different times. The allowance or rejection of one in no manner affects *the others. There is neither a joint interest nor a community of interest among them. All that can be said is, that they are pursuing the same debtor, and are seeking to subject the same property. Nor have they a common interest in that property. If the property they are seeking to subject to the liens of their several judgments was declared to be so liable, their interest would not be a common interest, but each independent of the other; for the proceeds would not be distributed pro rata, but according to the priorities of their several judgments. So that, in fact, their interests are diverse and antagonistic, instead of joint and common. They do not sue as co-plaintiffs, because they have a joint and common interest; but for convenience, and to save a multiplicity of suits, other creditors are permitted to come in by petition in a suit already commenced by one creditor. But though the proceeding by petition be in the same suit, these several demands are as distinct and independent of each other as. if they were pursuing the same debtor in different and independent suits. • The decree of the court is not joint, but several, decreeing the several amounts due to them respectively, according to their several judgments. If one of the creditors is aggrieved by the decree, it is to the extent that his claim is not paid, and not because other creditors are not paid: and if his claim be less than $500, he cannot successfully invoke the jurisdiction of the court by uniting his claim to that of another creditor, in order to swell , the amount to $500. These positions are fully sustained by the authorities cited by the learned counsel for the appellees.
The case of Oliver v. Alexander, 6 Peters’ R. 143, was a suit in which several seamen united, as was permitted *by act of congress and practice in ad *349 miralty in a libel, seeking- to subject a certain fund to the payment of their several demands. The sum decreed to the libellants in no case amounted to $2,000 (that being the amount which gives jurisdiction to the Supreme court of the United States), most of the claims being less than $500. It was held that the matter in controversy was several with each libellant; and that inasmuch as no one claim amounted to $2,000, though all combined exceeded that sum, the court had no jurisdiction.
Mr. Justice Story delivering the opinion of the court says: “The decree assigns to each seaman severally the amount to which he is entitled, and dismisses the libel as to those who have maintained no right to the interposition of the court in their favor. The whole proceeding, therefore, though it assumes the form of a joint suit, is, in reality, a mere joiner of distinct causes of action by distinct parties, growing out of the same contract. * * * It is obvious that the claim of each seaman is distinct and several, and the decree upon each claim is distinct and several. One seaman cannot appeal from the decree made in regard to the claim of another, for he has no interest in it, and cannot be aggrieved by it. The controversy, so far as he is concerned, is confined solely to his own claim, and the matter of dispute between him and the owner, or other respondents, is the sum or value of his own claim, without any reference to the claim of others. It is very clear, therefore, that no seaman can appeal from the District court to the Circuit court, unless his claim exceeds $50, nor from the Circuit court to the Supreme court, unless his claim exceeds $2,000.” And accordingly the appeal was dismissed for want of jurisdiction. The same doctrine was reaffirmed *in the cases of Stratton v. Jarvis and Brown, 8 Peters’ R. 4, and in Rich v. Lambert, 12 How. U. S. R. 347. The case of Seaver v. Bigelows, 5 Wall. U. S. R. 208, is a case much in point. That was a case (as is the case before us) of a judgment creditor filing a bill setting up his judgment and seeking its enforcement against the property of the defendant; and another creditor came into the same suit to enforce a judgment against the same fund, which he had recovered against the same defendant. The case is, in this respect, strikingly analogous to the case under consideration. Mr. Justice Nelson, who delivered the opinion of the court, said: “The judgment creditors who have joined in this bill have separate and distinct interest depending upon separate and distinct judgments. In no event could the sum in dispute, of either party, exceed the amount of their judgment, which is less than $2,000.” * * * “It is true the litigation involves a common fund, which exceeds the sum of $2,000; but neither of the judgment creditors has any interest in it exceeding the amount of his judgment. Hence, to sustain an appeal in this class of cases, where separate and distinct interests are in dispute, of an amount less than the statute requires, and where the joinder of parties is permitted by the mére indulgence of the court, for its convenience and to save expense, would be giving a privilege to the parties not common to other litigants, and - which is forbidden by law. The case (that is the case of creditors asserting different and distinct claims in the same suit) is analogous to proceedings in admiralty in behalf of seamen for wages, and salvers for salvage, where the practice of the court is well settled.” He then cites Rich v. Lambert, and other cases above cited, and declares that the appeal must be dismissed for want of jurisdiction.
*These authorities seem to establish • the proposition, that where the claims of the plaintiffs are separate and independent, though joined in the same suit, and where one claimant has no interest in the claim of the other, the court will not take jurisdiction because the aggregate sums amount to over $500; but in such a case the claim of each party appealing must amount to that sum.
I am not aware that the question in the form in which it is here presented, has ever been before this court. But this court held in Claiborne v. Gross and Wimbish v. Same, 7 Heigh 331, that where two judgment creditors filed separate bills in chancery impeaching a conveyance of land made by a debtor as fraudulent, which suits were consolidated, and there was a final decree dismissing the bills respectively, and the plaintiffs respectively appealed, that the amount in controversy in one of the suits being insufficient to give this court jurisdiction, the appeal in that suit should be dismissed. In the case before us the claims of each of the judgment creditors are as separate and distinct as if each had filed his separate and independent bill. They are permitted to assert their claims in the same suit merely as a matter of convenience, and to save the costs of litigation and prevent a multiplicity of suits. The amount in controversy between the parties is the amount of the claim of each judgment creditor, and not the’ aggregate amount of the whole. So that it follows that no one claim amounting to $500 the court has no jurisdiction.
The case of Rodd v. Heartt, 17 Wall. U. S. R. 354, so earnestly relied upon by one of the learned counsel for the appellants, is not at all in conflict with the views above presented and the authorities cited to sustain them. The case was this: A steamer having *been sold under a proceeding in rem in the admiralty, left in the registry of the court $4,337.51, claimed on the one hand by Rodd and several other persons creditors of the owners, who by one mortgage on the vessel had undertaken to secure all those creditors in a body, and, on the other hand, claimed by Heartt and others, mariners, furnishers of supplies and material men. The claim of Rodd under the mortgage was $4,825, and of his co-mortgagees was (in the aggregate) $8,000. The claim of the mariners, fur- *350 nishers of supplies and material men was $10,150. The District court decreed the fund to the mortgagees, which gave to Rodd $1,498.99 as his pro rata share. This decree of the District court- was reversed by the Circuit court, which held ‘ ‘that the claims of the mariners, furnishers of supplies and material men be recognized as superior to the claim of the mortgagee creditors, and paid in preference to the latter; and that a new distribution of the proceeds be prepared by the commissioner in accordance with the principles thus laid down.” It was from this decree that Rodd and his co-mortgagees appealed to the Supreme court, where a motion was made to dismiss the appeal, among other grounds,. ‘ ‘because no one of the claims exceeded $2,000, Rodd’s which was the largest, being but $1,498.99, and the judiciary acts giving an appeal only where the matter in dispute exceeds $2,0b0. ” The plain answer to this proposition is that the sum of $1,498.99 does not. represent the claim of Rodd, but that amount was the pro rata share of the fund decreed to him by the District court, but that decree was reversed by the Circuit court; his claim and those of his co-mortgagees was disallowed and the whole fund decreed to the other claimants. His claim was $4,825, the whole of which was disallowed; so that it was not *true as contended by the counsel in that case, that “Rodd’s claim, which was the largest, was less than $2,000.” And Chief Justice Chase therefore says, on the motion to dismiss the appeal: “As to the second ground on which a dismissal is asked, it is apparent that though no one of the claims allowed exceeded $2,000, yet the claim of the appellant which was disallowed exceeded that sum. ’ ’ The matters in dispute were the claims of the mortgagees in the fund, amounting to over $8,000, of which Rodd’s was over $4,000 and the claims of the mariners and others, on the other hand, amounting to over $10,000; both sets of claimants asserting their right to the fund in the hands of the court, amounting to over $4,000. This whole fund was given to one set of claimants, and the claim of the mortgagees was wholly disallowed. It is plain that the matter in dispute in this case exceeded $2,000.
In that case, too, it may be observed, that the mortgagees had a joint and common interest arising under the same contract, and secured by the same mortgage, having an interest pro rata in a common fund.
This case is not only not in conflict with the uniform course of decisions of the Supreme court of the United States, but, when properly understood, is entirely consistent with those decisions.
I think it is plain, therefore, both upon principle and authority, that the aggregate amount of the creditors’ claims cannot give the jurisdiction; and the claim of each being less than $500, the appeal must be dismissed, unless there be some other ground upon which the jurisdiction will attach.
It is claimed by the learned counsel for the appellants, that this case is brought within the jurisdiction of this court, because the matter in controversy is one ‘ ‘concerning the title to land.”
*By the second section of article six of the constitution it is provided that the Supreme court of Appeals “shall not have jurisdiction in civil cases where the matter in controversy, exclusive of costs, is less in value or amount than five hundred dollars, except in controversies concerning the title or boundaries of land, the probate of a will, the appointment or qualification of a personal representative, guardian, committee or curator, or concerning a mill, roadway, ferry or landing, or the right of a corporation or of a county to levy tolls or taxes, and except in cases of habeas corpus, mandamus, and prohibition, or the constitutionality of a law,” &c.
The phrase, “the matter in controversy,” when used in relation to the appellate jurisdiction of this court, has already received a judicial exposition. In Lewis v. Long, 3 Munf. 136, Judge Roane says: “The matter in controversy is that which is the essence and substance of the judgment, and by which the party may discharge himself.” In the cases of Hutchinson v. Kellam, and Lymbrick v. Selden, 3 Munf. 202, in both of which the action was trespass quare clausum fregit, and the damages recovered were less than $100, but it appeared from the records that the title or bounds of land were drawn in question, Judge Cabell said, and in this the majority of the court concurred : ‘ ‘To give this court jurisdiction, the matter in controversy must be equal in value to $100, or must be a franchise or freehold. The action of trespass is one in which damages alone can be recovered, and although title or bounds of land may be incidentally or collaterally brought in question, yet the value of the matter in controversy is, from the nature of the action, the value of the damages sustained by the trespass; and this as well where the title or bounds of land may *be drawn in question, as where they may in no manner be involved in the dispute. ’ ’
These cases were followed by Skipwith v. Young, 5 Munf. 276. That was an action on the case for injury to the land of the plaintiff by the erection of a mill dam. - There was a verdict for the plaintiff for one penny damages, subject to-the opinion of the court on a point reserved, involving the right of the defendant to build a mill under the circumstances set forth. It thus appeared that the questions between the parties were the right and title to the land overflowed, and the right to continue the mill and dam. In the course of his opinion in this case, Judge Brooke remarked “that the matter in controversy is that for which the suit is brought, and not that which may or may not come in question.” * * “The injury in the case before the court is emphatically the matter in controversy, though other matters may have been put in issue, the finding of which by *351 a jury may, if pleaded, estop the party in another action. ’ ’
Now to give this court jurisdiction in the case before us, the matter in controversy must either be $500, or the matter in controversy must be “concerning the title or boundaries of land;” or in other words, adopting the judicial interpretation of the words “matter in controversy,” that for which the suit is brought must be a matter “concerning the title or bounds of land. ’ ’ In the case before us, the suit is not brought for the land, but to enforce a pecuniary demand against the land. The object of the suit is to recover money evidenced by judgments ; and the land is only the fund out of which it is sought to enforce the payment. In such a suit by a creditor to enforce a judgment lien, the question as to the title or bounds of land may or may not arise. The question *does not (in such a suit) directly arise, but may arise as incident or collateral to the matter “for which the suit is brought.” To adopt the language of Judge Brooke, “the essence and substance” of the decree in such a case is for the payment of the money due upon the judgment; and by the payment of that “'the party may discharge himself. ’ ’ In every such case the decree is always for the payment of the money due under the judgment; and in default of payment within a reasonable time, the sale of the land is decreed. Now it would be a most unreasonable construction to hold that in every creditor’s bill to enforce a judgment lien, because the land may be sold’ by decree of the court to satisfy the judgment, that therefore it is necessarily a suit “concerning the title or bounds of land.” “That for which the suit is brought” is to enforce a pecuniary demand. The essence and substance of the decree is the payment of the pecuniary demand asserted; and bj' that payment the defendant “may discharge himself,” and “the title or bounds of the land” be in no manner brought in question.
In support of these views as to the true construction of the constitution, it may be further observed, that not onlj have the words “matters in controversy” received a judicial exposition, but also the word “concerning,” as used in the constitution. The same section of the constitution which we have been considering confers jurisdiction upon this court in ‘ ‘controversies concerning a road, ’ ’ and the statute law authorizes appeals as of right from orders of the County courts in ‘ ‘controversies concerning a road. ’’ But it was held by this court in Hancock v. Richmond and Petersburg Railroad Co., 3 Gratt. 328, that appeals of right from orders of the County court in controversies * concerning roads, only exist where the controversy is concerning the establishment of a road; and not where it is a collateral controversy concerning the damages occasioned by a road already established. See also opinion of Chief Justice Marshall in Spring v. Gray’s ex’ors, 6 Peters’ R. 151, 10 Curtis 77, where the same word “concerning” is used in a statute under consideration in that case, and is construed by him.
Upon the whole, I am of opinion that this court is without jurisdiction to determine the questions in controversj' between the parties, and that the appeal must be dismissed.
Appeal dismissed.